ORIGINAL

E-filing

1  ERIC DONEY, #76260
   eric@donahue.com
2  JULIE E. HOFER, #152185
   julie@donahue.com
3  ERIC A. HANDLER, #224637
   ehandler@donahue.com
4  DONAHUE GALLAGHER WOODS LLP
   Attorneys at Law
5  300 Lakeside Drive, Suite 1900
   Oakland, California 94612-3570
6  Telephone:    (510) 451-0544
   Facsimile:    (510) 832-1486
7
   Attorneys for Plaintiff
8  AUTODESK, INC.

9

FILED
MAY 27 2009
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13  AUTODESK, INC., a Delaware           CASE NO. C09-02337
    corporation,
14                                        COMPLAINT FOR DAMAGES AND
                   Plaintiff,            INJUNCTIVE RELIEF
15
           v.                             1. Copyright Infringement;
16                                        2. Circumvention of Copyright Protection
    BUYPCSOFT.COM, INC., a Texas             Measures;
17  corporation; MEHRAN TABATABAYEE,      3. Trademark Infringement/Counterfeiting; and
    an individual; H S SQUARED            4. False Designation of Origin and Unfair
18  INTERNATIONAL, LLC, a New                Competition
    Hampshire limited liability company;
19  SEAN SAAD, an individual; and DOES 1
    through 10, inclusive,
20
                   Defendants.
21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                           CASE NO.

Plaintiff Autodesk, Inc. ("Autodesk") states and alleges as follows for its complaint against defendants BuyPCSoft.com, Inc. ("BuyPCSoft.com"), Mehran Tabatabayee ("Tabatabayee"), H S Squared International, LLC ("H S Squared"), Sean Saad ("Saad"), and Does 1 through 10, inclusive (collectively, the "Does"), all referred to collectively hereinafter as "Defendants."

## JURISDICTION AND VENUE

### Parties

1. Autodesk is a Delaware corporation with its principal place of business in San Rafael, California.

2. Autodesk is informed and believes and thereon alleges that BuyPCSoft.com is a Texas corporation with its principal place of business in Texas and which does business using the Internet and interstate mail.

3. Autodesk is informed and believes and thereon alleges that Tabatabayee: (a) is an individual whose place of residence is in Texas and who does business using the Internet and interstate mail; (b) is an officer, shareholder, director, and/or agent of BuyPCSoft.com and otherwise controls BuyPCSoft.com; and (c) personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and derived financial benefit from that conduct.

4. Autodesk is informed and believes and thereon alleges that H S Squared is a New Hampshire limited liability company with its principal place of business in New Hampshire and which does business using the Internet and interstate mail.

5. Autodesk is informed and believes and thereon alleges that Saad: (a) is an individual whose place of residence is in New Hampshire and who does business using the Internet and interstate mail; (b) is an officer, director, member, manager, and/or agent of H S Squared and otherwise controls H S Squared; and (c) personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint and derived financial benefit from that conduct.

6. Autodesk is informed and believes and thereon alleges that the Does are either

entities or individuals subject to the jurisdiction of this Court. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Does are unknown to Autodesk, who therefore sues the Does, and each of them, by such fictitious names, and Autodesk will seek leave of the Court to amend this Complaint to allege such true names and capacities when the same are ascertained.

7. Autodesk is informed and believes and thereon alleges that each of the Defendants was the agent, employee, and/or alter-ego of each of the other remaining Defendants and, at all times relevant herein, acted within the course and scope of such agency and/or employment.

### Jurisdiction

8. This case is a civil action arising under the copyright laws of the United States, 17 U.S.C. § 101, *et seq.* (the "Copyright Act"), and the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"). This Court has subject matter jurisdiction over Autodesk's claims pursuant to 17 U.S.C. § 501, *et seq.* (copyright), 15 U.S.C. § 1114, *et seq.* (trademark infringement/counterfeiting, false designation of origin, and unfair competition), 28 U.S.C. § 1331 (federal subject matter jurisdiction), and 28 U.S.C. § 1338(a) (copyright and trademark actions).

9. Autodesk is informed and believes and thereon alleges that Defendants knew, or reasonably should have known, that Autodesk: (a) is located in California, and that Defendants directed and aimed their alleged unauthorized activities at Autodesk, which is located in the Northern District of California; and (b) would likely suffer the brunt of the harm caused by Defendants in California at Autodesk's principal place of business. The activities of Defendants complained of herein caused Autodesk to bear the brunt of the harm in California at its principal place of business in San Rafael, California within this District.

### Venue

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (a), (b), and (c) and 1400(a).

### Intradistrict Assignment

11. Because this matter is an Intellectual Property Action, there is no basis for

1  assignment to a particular location or division of the Court pursuant to Civil L.R. 3-2(c).

## GENERAL ALLEGATIONS

### Introduction

12. Autodesk is in the business of, and has made and continues to make substantial investments of time, effort, and expense in, designing, developing, testing, manufacturing, publishing, marketing, distributing, and licensing a wide variety of software products recorded on various media, including without limitation optical disks, for use on computers. Autodesk has gained a worldwide reputation for quality and reliability respecting its software products.

13. In connection with Autodesk's software products, Autodesk owns copyrights that are the subject of registrations with the United States Copyright Office and trademarks that are the subject of registrations with the United States Patent and Trademark Office.

14. Widespread sales of illegal copies of Autodesk's software products (commonly known as software piracy) and widespread unauthorized use of Autodesk's trademarks or marks confusingly similar thereto in connection with such sales (commonly known as counterfeiting) cause significant harm to Autodesk, undermine Autodesk's investments in its products, diminish Autodesk's goodwill, and cause substantial harm to consumers who are falsely led to believe they are acquiring licensed genuine Autodesk software products.

15. Autodesk brings this action as a result of Defendants' unauthorized copying, reproduction, and/or distribution of certain of Autodesk's software products, Defendants' circumvention of technological copyright protection measures incorporated into those software products, and Defendants' unauthorized use of certain of Autodesk's trademarks and/or marks confusingly similar thereto, through sales conducted over the Internet, including via the website accessible through the domain name buypcsoft.com (the "Website"), and through interstate mail. Defendants' actions complained of herein were and continue to be undertaken willfully and intentionally and have caused and continue to cause substantial damage to Autodesk and the software industry.

16. Defendants' actions complained of herein constitute willful violation of Autodesk's rights under the Copyright Act and the Lanham Act. Autodesk respectfully requests

1  the Court enter an injunction against Defendants and award Autodesk damages, costs, and
2  attorney's fees as allowed by statute.

### Autodesk's Software Products, Copyrights, and Trademarks

4  17.  Two of Autodesk's software products include AutoCAD® 2008 software and
5  AutoCAD® 2009 software. Autodesk packages and distributes the aforenamed software products
6  together with associated user instruction manuals, end-user license agreements, and other
7  documentation. The aforenamed software products along with their user instruction manuals are
8  referred to collectively hereinafter as the "Autodesk Products."

9  18.  The Autodesk Products contain a large amount of material wholly original with
10 Autodesk, which material is copyrightable subject matter under the laws of the United States.

11 19.  At all times herein relevant, Autodesk complied in all respects with the Copyright
12 Act, secured the exclusive rights and privileges in and to the copyrights in the Autodesk Products
13 (collectively, the "Autodesk Copyrights"), and possessed Certificates of Registration from the
14 Register of Copyrights for the Autodesk Copyrights, including, without limitation, U.S.
15 Registration Nos. TX0006576172 (registered May 18, 2007) and TX0006861815 (registered June
16 2, 2008).

17 20.  Since the registration of the Autodesk Copyrights with the Register of Copyrights,
18 the Autodesk Products have been published and distributed by Autodesk or under its authority in
19 compliance with the Copyright Act.

20 21.  At all times herein relevant, Autodesk has owned trademarks registered in
21 accordance with the Lanham Act with the United States Patent and Trademark Office, from
22 which Autodesk has received Certificates of Registration. Autodesk's trademarks include,
23 without limitation, AUTODESK® (U.S. Trademark Registration No. 1,316,772) and
24 AUTOCAD® (U.S. Trademark Registration No. 1,316,773), both registered January 29, 1985 and
25 maintained on the Principal Register (collectively, the "Autodesk Trademarks").

26 22.  Autodesk has continuously used each of the Autodesk Trademarks from the date
27 of registration thereof, or earlier, until the present and at all times relevant to the claims alleged
28 herein. As a result of extensive use, advertising, and sales, together with longstanding consumer

1  acceptance, the Autodesk Trademarks identify to consumers and the public that Autodesk is the
2  source of origin for authorized copies of the Autodesk Products. The Autodesk Trademarks have
3  acquired throughout the United States and the world secondary meaning in the minds of
4  consumers, who associate the Autodesk Trademarks with Autodesk and its quality products. By
5  virtue of Autodesk's advertising and distribution of the Autodesk Products in connection with the
6  Autodesk Trademarks, together with consumer acceptance and recognition, the Autodesk
7  Trademarks identify Autodesk and the Autodesk Products and distinguish the same from,
8  respectively, other entities and their products. The Autodesk Trademarks have become, and are,
9  valuable assets symbolizing Autodesk, its quality goods, and its goodwill.

10      23.     Autodesk has not authorized Defendants to: (a) copy, reproduce, or distribute the
11 Autodesk Products; (b) circumvent the technological copyright protection measures in the
12 Autodesk Products that control access to the Autodesk Products; or (c) use the Autodesk
13 Trademarks in connection with the Autodesk Products.

### The Business and Infringing Activities of Defendants

15      24.     Autodesk is informed and believes and thereon alleges that, without Autodesk's
16 authorization, Defendants and/or their agents have: (a) copied and reproduced the Autodesk
17 Products; (b) circumvented technological copyright protection measures associated with all
18 authorized copies of the Autodesk Products to make and distribute unauthorized copies of the
19 Autodesk Products; (c) used the Internet, including without limitation the Website, and interstate
20 mail to advertise, sell, and distribute such unauthorized copies of the Autodesk Products to
21 consumers throughout the United States; and (d) used and distributed unauthorized reproductions,
22 counterfeits, and/or copies of the Autodesk Trademarks, or marks confusingly similar thereto,
23 including without limitation on the Website and on the unauthorized copies of the Autodesk
24 Products that Defendants copied, reproduced, sold, and distributed.

25      25.     Autodesk is informed and believes and thereon alleges that Defendants have
26 engaged willfully and intentionally in the conduct complained of above.

27      26.     In or around 2003, Autodesk discovered that Saad was marketing, selling, and/or
28 distributing copies of Autodesk's software products and using Autodesk's trademarks, or marks

confusingly similar thereto, without Autodesk's authorization. Through undersigned counsel, Autodesk instructed Saad in writing to cease and desist from further similar unauthorized activities. Saad responded in writing and confirmed his receipt of Autodesk's instructions. Autodesk is informed and believes and thereon alleges that subsequent to that contact, Saad: (a) sold and distributed illegal copies of certain of Autodesk's software products, including, without limitation, the Autodesk Products; and (b) used in commerce and without authorization certain of Autodesk's trademarks, including, without limitation, the Autodesk Trademarks.

27.     In or around late 2007 or early 2008, Autodesk discovered that BuyPCSoft.com and Tabatabayee were marketing, selling, and/or distributing copies of Autodesk's software products and using Autodesk's trademarks, or marks confusingly similar thereto, without Autodesk's authorization. Through undersigned counsel, Autodesk instructed BuyPCSoft.com and Tabatabayee in writing to cease and desist from further similar unauthorized activities. BuyPCSoft.com and Tabatabayee responded in writing and confirmed their receipt of Autodesk's instructions. Autodesk is informed and believes and thereon alleges that subsequent to that contact, BuyPCSoft.com and Tabatabayee: (a) marketed, sold, and distributed illegal copies of certain of Autodesk's software products, including, without limitation, the Autodesk Products; and (b) used in commerce and without authorization certain of Autodesk's trademarks, including, without limitation, the Autodesk Trademarks.

28.     In or around October 2007, a third party, Microsoft Corporation ("Microsoft"), filed a civil action in federal court against BuyPCSoft.com and Tabatabayee (the "Other Infringement Action") alleging their willful violation of both the Copyright Act for copyright infringement and the Lanham Act for claims of trademark infringement, false designation of origin, and false endorsement. In the Other Infringement Action, the United States District Court for the Southern District of Texas in or around January 2009: (a) issued an injunction permanently enjoining BuyPCSoft.com and Tabatabayee from committing further acts of software-related infringement; and (b) entered a consent judgment determining that BuyPCSoft.com and Tabatabayee were jointly and severally liable to Microsoft in the amount of Two Hundred Fifty Thousand Dollars ($250,000).

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement Against All Defendants)

29. Autodesk re-alleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 28 above as though fully set forth.

30. Defendants' acts constitute infringement of the Autodesk Copyrights in violation of the Copyright Act, 17 U.S.C. § 501.

31. Autodesk is informed and believes and thereon alleges that: (a) Defendants' unauthorized copying, reproduction, and distribution of the Autodesk Products was deliberate, willful, malicious, oppressive, and without regard to the Autodesk's proprietary rights, including without limitation the Autodesk Copyrights; and (b) Defendants' actions complained of above occurred both before and after the United States District Court for the Southern District of Texas issued a permanent injunction and entered a judgment in the Other Infringement Action.

32. Defendants' copyright infringement has caused, and will continue to cause, Autodesk to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to, and copyrights in, the Autodesk Products and, further, has damaged Autodesk's business reputation and goodwill, diverted Autodesk's trade, and caused Autodesk to lose profits, all in an amount not yet ascertained.

33. Defendants' copyright infringement, and the threat of continuing infringement by Defendants, have caused, and will continue to cause, Autodesk to suffer repeated and irreparable injury. It would be difficult to ascertain the amount of money damages that would afford Autodesk adequate relief at law for Defendants' continuing acts, and a multiplicity of judicial proceedings would be required. Autodesk's remedy at law is not adequate to compensate Autodesk for the injuries already inflicted and further threatened by Defendants. Therefore, Defendants should be restrained and enjoined pursuant to the Copyright Act.

WHEREFORE, Autodesk seeks relief as set forth below.

///

## SECOND CLAIM FOR RELIEF

### (Circumvention of Copyright Protection Measures Against All Defendants)

34. Autodesk re-alleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 28 above as though fully set forth.

35. The Autodesk Products contain technological measures that effectively control access to the Autodesk Products (collectively, the "Access Control Technology").

36. Autodesk is informed and believes and thereon alleges that to engage in the unauthorized copying, reproduction, and distribution of the Autodesk Products, Defendants used without Autodesk's authorization one or more technologies, products, services, devices, components, or parts thereof to willfully and intentionally circumvent the Access Control Technology contained in the Autodesk Products.

37. Autodesk is informed and believes and thereon alleges that Defendants circumvented the Access Control Technology without Autodesk's authorization in violation of 17 U.S.C. § 1201(a).

38. Defendants' unauthorized circumvention of the Access Control Technology in the Autodesk Products has caused, and will continue to cause, Autodesk to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to, and copyrights in, the Autodesk Products and, further, has damaged Autodesk's business reputation and goodwill, diverted its trade, and caused a loss of profits, all in an amount not yet ascertained.

39. Defendants' unauthorized circumvention of the Access Control Technology in the Autodesk Products, and the threat of continuing circumvention, has caused, and will continue to cause, Autodesk to suffer repeated and irreparable injury. It would be difficult to ascertain the amount of money damages that would afford Autodesk adequate relief at law for Defendants' continuing acts complained of herein, and a multiplicity of judicial proceedings would be required. Autodesk's remedy at law is not adequate to compensate it for the injuries already inflicted and further threatened by Defendants. Therefore, pursuant to the Copyright Act, Defendants should be restrained and enjoined and any device or product in Defendants' custody or control that enabled or was involved in the circumvention should be impounded pursuant to the

Copyright Act, 17 U.S.C. § 1203(b).

WHEREFORE, Autodesk seeks relief as set forth below.

### THIRD CLAIM FOR RELIEF

### (Trademark Infringement and Counterfeiting Against All Defendants)

40. Autodesk re-alleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 28 above as though fully set forth.

41. Defendants' acts constitute infringement of the Autodesk Trademarks in violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).

42. Autodesk is informed and believes and thereon alleges that Defendants' infringing acts alleged above have caused, and will continue to cause, a likelihood of, and actual, confusion, mistake, and/or deception among consumers as to the source, quality, and nature of the unauthorized, unlicensed, and infringing copies of the Autodesk Products made, advertised, sold, and distributed by Defendants.

43. Autodesk is informed and believes and thereon alleges that Defendants' unauthorized use of the Autodesk Trademarks competes directly with Autodesk's distribution of authorized copies of the Autodesk Products, diverts trade from Autodesk, and diminishes Autodesk's goodwill.

44. Autodesk is informed and believes and thereon alleges that Defendants' infringing acts alleged above have and will lead consumers to believe erroneously that the unauthorized copies of the Autodesk Products made, advertised, sold, and distributed by Defendants are being offered for distribution by Autodesk or with Autodesk's authorization.

45. Autodesk is informed and believes and thereon alleges that Defendants' use of the Autodesk Trademarks on the Internet, in interstate mail, in marketing materials, and/or on unauthorized copies of the Autodesk Products has caused, and is likely to continue to cause, confusion amongst consumers, threatens injury to Autodesk's business reputation and the goodwill associated with the Autodesk Trademarks, and constitutes fraud on the public.

46. Autodesk is informed and believes and thereon alleges that: (a) Defendants have used reproductions, counterfeits, copies, or colorable imitations of the Autodesk Trademarks in

-10-

commerce in connection with Defendants' distribution of unauthorized copies of the Autodesk Products; (b) Defendants used the Autodesk Trademarks knowing that such use was counterfeit; and (c) Defendants' counterfeit use of the Autodesk Trademarks was in connection with the same categories of goods or services as are covered by Autodesk's federal registrations of those trademarks as maintained by the United States Patent and Trademark Office.

47. Autodesk is informed and believes and thereon alleges that Defendants' actions alleged above have created, and will continue to create, among members of the general public a likelihood of confusion, mistake, or deception, and actual confusion, mistake, or deception, as to Defendants' purported affiliation, connection, and/or association with Autodesk and as to the purported origin, sponsorship, and/or approval by Autodesk of the distributed goods and activities of Defendants complained of above.

48. Autodesk is informed and believes and thereon alleges that, as a result of Defendants' acts complained of above, Autodesk has suffered damage to its business reputation and goodwill, a diversion of trade, and a loss of profits, all in an amount not yet ascertained and for which Autodesk is entitled to recover damages pursuant to 15 U.S.C. § 1117.

49. Autodesk is informed and believes and thereon alleges that: (a) Defendants' infringement and counterfeiting of the Autodesk Trademarks was deliberate, willful, malicious, oppressive, and without regard to Autodesk's proprietary rights; and (b) Defendants' actions complained of above occurred both before and after the United States District Court for the Southern District of Texas issued a permanent injunction and entered a judgment in the Other Infringement Action.

50. As a result of the damage suffered by Autodesk in connection with its business reputation and goodwill, the diversion of its trade, and the loss of its profits as caused by Defendants' infringement and counterfeiting of the Autodesk Trademarks, all in an amount not yet ascertained, Autodesk is entitled to recover damages pursuant to 15 U.S.C. § 1117.

51. Defendants' trademark infringement and counterfeiting, and the threat of continuing infringement and counterfeiting, have caused, and will continue to cause, Autodesk repeated and irreparable injury. It would be difficult to ascertain the amount of money damages

1  that would afford Autodesk adequate relief at law for Defendants' continuing acts, and a
2  multiplicity of judicial proceedings would be required.  Autodesk's remedy at law is not adequate
3  to compensate Autodesk for the injuries already inflicted and further threatened by Defendants.
4  Therefore, Defendants should be restrained and enjoined pursuant to the Lanham Act, 15 U.S.C.
5  § 1051, *et seq.*, including without limitation 15 U.S.C. § 1116, *et seq.*

WHEREFORE, Autodesk seeks relief as set forth below.

## FOURTH CLAIM FOR RELIEF

**(False Designation Of Origin And Unfair Competition Against All Defendants)**

52. Autodesk re-alleges and incorporates herein by this reference each of the allegations contained in Paragraphs 1 through 28 above as though fully set forth.

53. This claim for relief arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54. Autodesk is informed and believes and thereon alleges that Defendants have used the Autodesk Trademarks, have made false descriptions or representations regarding the Autodesk Products, have distributed unauthorized copies of the Autodesk Products in interstate commerce, and have caused said unauthorized copies to enter interstate commerce.

55. Autodesk is informed and believes and thereon alleges that Defendants' actions alleged above have created, and will continue to create, among members of the general public a likelihood of confusion, mistake, or deception, and actual confusion, mistake, or deception, as to Defendants' purported affiliation, connection, and/or association with Autodesk and as to the purported origin, sponsorship, and/or approval by Autodesk of the distributed goods and activities of Defendants.

56. Autodesk is informed and believes and thereon alleges that Defendants' actions in commercial advertising and promotions misrepresent the characteristics and qualities of the Autodesk Products.

57. Autodesk is informed and believes and thereon alleges that Defendants' actions complained of above:  (a) were deliberate, willful, malicious, oppressive, and without regard to Autodesk's proprietary rights; and (b) occurred both before and after the United States District

Court for the Southern District of Texas issued a permanent injunction and entered a judgment in the Other Infringement Action.

58.   Defendants' actions complained of above constitute unfair competition with Autodesk, and as a result of Defendants' acts complained of above, Autodesk has suffered damage to its business reputation and goodwill, a diversion of trade, and a loss of profits, all in an amount not yet ascertained and for which Autodesk is entitled to recover damages pursuant to 15 U.S.C. § 1117.

59.   Defendants' false designation of origin and unfair competition, and the threat of continuing false designation of origin and unfair competition, have caused, and will continue to cause, Autodesk repeated and irreparable injury. It would be difficult to ascertain the amount of money damages that would afford Autodesk adequate relief at law for Defendants' continuing acts, and a multiplicity of judicial proceedings would be required. Autodesk's remedy at law is not adequate to compensate Autodesk for the injuries already inflicted and further threatened by Defendants. Therefore, Defendants should be restrained and enjoined pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, including without limitation 15 U.S.C. § 1116.

## PRAYER FOR RELIEF

WHEREFORE, Autodesk seeks relief as follows:

1. That, upon motion, the Court issue a preliminary injunction enjoining and restraining Defendants, and each of them, and their respective agents, servants, employees, successors and assigns, and all other persons acting in concert or conspiracy with Defendants or affiliated with Defendants, from:

   (a)   copying, reproducing, distributing, or using any unauthorized copies of Autodesk's copyrighted software products;

   (b)   otherwise infringing any of Autodesk's copyrights;

   (c)   using any technologies, products, services, devices, components, or parts thereof to circumvent technological copyright protection measures associated with any of Autodesk's software products;

   (d)   copying, reproducing, advertising, offering for sale, distributing, or using

any software products under or in connection with any of Autodesk's trademarks or any other marks confusingly similar thereto;

   (e) using in any manner any of Autodesk's trademarks, or any marks confusingly similar thereto, in connection with any of Defendants' goods in such a manner that is likely to create the erroneous belief that said goods are authorized by, sponsored by, licensed by, or are in some way associated with Autodesk;

   (f) otherwise infringing any of Autodesk's trademarks; and

   (g) destroying or altering any copies of software or other products, materials, technologies, services, devices, components, documents, or electronically stored data or files that relate or pertain in any way to the:

     (i) copying, reproduction, distribution, or use of Autodesk's software products;

     (ii) circumvention of technological copyright protection measures associated with any of Autodesk's software products;

     (iii) use of Autodesk's trademarks, or any trademarks confusingly similar thereto, on or in connection with the advertisement, sale, or distribution of goods; or

     (iv) infringement of Autodesk's copyrights or trademarks.

  2. That the Court issue a permanent injunction making permanent the orders requested in paragraphs 1(a) through (f) of this Prayer for Relief;

  3. That, upon motion, the Court issue a preliminary injunction impounding any device or product in Defendants' custody or control that has been involved in Defendants' circumvention of technological copyright protection measures associated with any of Autodesk's software products;

  4. That Autodesk be awarded for Defendants' copyright infringement either: (a) actual damages in an amount to be determined at trial, together with the profits derived from Defendants' unlawful infringement of Autodesk's copyrighted Autodesk Products; or (b) statutory damages for each act of infringement in an amount provided by law, as set forth in 17 U.S.C. § 504, at Autodesk's election before the entry of a final judgment;

5. That Autodesk be awarded for Defendants' circumvention of technological copyright protection measures either: (a) actual damages in an amount to be determined at trial, together with the profits derived from Defendants' circumvention; or (b) statutory damages for each violation in an amount provided by law, as set forth in 17 U.S.C. § 1203(c), at Autodesk's election before the entry of a final judgment;

6. That Autodesk be awarded for Defendants' infringement of the Autodesk Trademarks, false designation of origin, and unfair competition, as set forth in 15 U.S.C. § 1117(a), the profits obtained by Defendants and the damages sustained by Autodesk by reason of Defendants' unlawful acts alleged herein, and that such amounts be trebled pursuant to 15 U.S.C. § 1117(b);

7. That Autodesk be awarded for Defendants' trademark counterfeiting, as set forth in 15 U.S.C. § 1117(c), and at Autodesk's election before the entry of the final judgment, either: (a) actual damages in an amount to be determined at trial, together with Defendants' profits derived from the unlawful counterfeiting of Autodesk's registered trademarks; or (b) statutory damages for each registered trademark in an amount provided by law based on a determination that Defendants' trademark counterfeiting was willful;

8. That the Court issue an order requiring Defendants to file with this Court and serve on Autodesk within thirty (30) days after service of an injunction a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

9. That the Court issue an order upon judgment requiring Defendants to destroy any and all infringing copies in Defendants' possession, custody, or control of Autodesk's software products and materials bearing Autodesk's trademarks without Autodesk's authorization;

10. That the Court issue an order upon judgment requiring Defendants to destroy any device or product involved in Defendants' circumvention of technological copyright protection measures associated with any of Autodesk's software products;

11. That the Court award Autodesk its reasonable attorney's fees pursuant to 17 U.S.C. §§ 505 and 1203(b) and 15 U.S.C. § 1117(a)(3);

12. That the Court award Autodesk its costs of suit incurred herein; and

13. That the Court grant such other and further relief as it deems just and proper.

Dated: May 27, 2009                    DONAHUE GALLAGHER WOODS LLP

By: _____
Julie E. Hofer
Attorneys for Plaintiff
AUTODESK, INC.

-16-
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                              CASE NO.